MILLER BREWING COMPANY and National Union Fire Insurance, Plaintiffs-Appellants-Petitioners,

v.

LABOR & INDUSTRY REVIEW COMMISSION and John E. Beverly, Defendants-Respondents.

Supreme Court

*No. 91-1125. Oral argument November 30, 1992.—Decided February 22, 1993.*

(Also reported in 495 N.W.2d 660.)

701

703

For the plaintiffs-appellants-petitioners there were briefs by *George K. Whyte, Jr., Patricia K. McDowell, Donald L. Schriefer,* and *Quarles & Brady,* Milwaukee and oral argument by *Mr. Whyte.*

For the defendant-respondent, Labor & Industry Review Commission the cause was argued by *Lowell E. Nass,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the defendant-respondent, John E. Beverly, there was a brief by *Arthur Heitzer,* Milwaukee and oral argument by *Arthur Heitzer.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Miller Brewing Co. v. Labor and Industry Review Commission,* 166 Wis. 2d 830, 480 N.W.2d 532 (Ct. App. 1992), affirming an order of the Circuit Court for Milwaukee County, John E. McCormick, Circuit Judge. The circuit court dismissed with prejudice an action by Miller Brewing Company (Miller Brewing) and National Union Fire Insurance (National Union Insurance), challenging the Labor and Industry Review Commission's (LIRC's) award of worker's compensation to John E. Beverly, an employee of Miller Brewing.

The sole question presented is the meaning of the phrase "adverse party" in sec. 102.23(1)(a), Stats. 1989–90, which governs judicial review of LIRC's worker's compensation decisions. More specifically, the

question of law posed is whether Twin City Fire Insurance Company (Twin City Insurance), one of Miller Brewing's worker's compensation carriers, is an "adverse party" for purposes of sec. 102.23(1)(a), Stats. 1989-90, thus requiring that it be made a defendant in the circuit court action for judicial review in the case at bar.

The circuit court concluded that it lacked subject matter jurisdiction over this action because Twin City Insurance was an adverse party which was not named as a defendant in the circuit court action as required by sec. 102.23(1)(a) and dismissed the action.[1] The court of

[1] Wisconsin courts and commentators have used the terms "subject matter jurisdiction" and "competence" in a variety of ways. *In the Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 656, n.17, 469 N.W.2d 845 (1991).

This court has said that " '[n]o circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever.' *Mueller v. Brunn*, 105 Wis. 2d 171, 176, 313 N.W.2d 790 (1982). In Wisconsin, a circuit court's jurisdiction is conferred by our state constitution and not by acts of the legislature." *In the Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 655-56, 469 N.W.2d 845 (1991). We have labeled the circuit court's inability to adjudicate the specific case before it because of a failure to comply with a statutory requirement as a loss of competence. *In the Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 656, 469 N.W.2d 845 (1991).

The court of appeals sometimes uses the phrase "the circuit court's competence to exercise subject matter jurisdiction." *See, e.g., In the Interest of L.M.C.*, 146 Wis. 2d 377, 390-97, 432 N.W.2d 588 (Ct. App. 1988).

1 Restatement (Second) of Judgments (1982) explains that the Restatement uses the terms subject matter jurisdiction and competence interchangeably (Intro. Note at p. 28 and Comments to sec. 11 at pp. 108-09). As we explained in *In the Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 656, n.17, 469 N.W.2d 845 (1991), the Restatement (Second) of Conflicts uses the term com-

appeals affirmed the circuit court. For the reasons set forth below, we conclude that Twin City Insurance is an adverse party and that Miller Brewing's and National Union's failure to name Twin City Insurance as a defendant requires dismissal of the action. Accordingly we affirm the decision of the court of appeals.

Section 102.23(1)(a) requires that an action be brought and the adverse parties be made defendants within the statutory 30-day period. If an appellant does not comply with sec. 102.23(1)(a) the circuit court cannot proceed with the case; the circuit court must dismiss the action with prejudice and the appellant loses the right to judicial review of LIRC's decision.[2]

---

petence to refer to both personal and subject matter jurisdiction and apparently identifies errors this court refers to as affecting a court's competence as "requirements . . . necessary for the valid exercise of power by the court."

The statutes (including rules this court has promulgated under sec. 751.12 , Stats. 1991–92) refer to a court's subject matter jurisdiction, not competency. See, e.g., sec. 645.04(5), 767.22 (1), 801.04(1), 801.05, 801.07, 802.06(8)(c), 807.07(2), Stats. 1991–92. Section (rule) 801.04(1) defines subject matter jurisdiction as follows: "The power of the court to hear the kind of action brought is called 'jurisdiction of the subject matter'. Jurisdiction of the subject matter is conferred by the constitution and statutes of this state and by statutes of the United States . . .." Section (rule) 802.06(8)(c) provides that if "the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

As this court explained in *In the Interest of B.J.N. and H.M.N.*, 162 Wis. 2d 635, 656–57, 469 N.W.2d 845 (1991), the critical focus is not, however, on the terminology used to describe the court's power to proceed in a particular case. The focus is on the effect of non-compliance with a statutory requirement on the circuit court's power to proceed.

[2] *See, e.g., Brandt v. LIRC,* 166 Wis. 2d 623, 630, 480 N.W.2d 424 (1992); *Aparacor, Inc. v. ILHR Dept,* 97 Wis. 2d 399, 407, 293

While courts have acknowledged that dismissal is a harsh penalty for failure to comply with sec. 102.23(1)(a), courts have also recognized that uniformity, consistency and compliance with procedural rules are necessary to maintain a simple, orderly and uniform system of conducting business in the courts. If the statutory prescriptions are to be meaningful, they must be unbending. *Gomez v. LIRC,* 153 Wis. 2d 686, 693, 451 N.W.2d 475 (Ct. App. 1989). Dismissal is the appropriate remedy in a case such as this when an adverse party was not named as a defendant.

We do, however, wish to express our concern that sec. 102.23(1)(a) continues to engender litigation. Section 102.23(1)(a) should not be a trap for lawyers and litigants. It should be easy to ascertain which parties must be named as defendants. Perhaps sec. 102.23(1)(a) needs legislative reexamination and revision.

## I.

The material facts are undisputed for purposes of this review. John E. Beverly served in the United States Army from November 1967 to April 1969. He served sixteen months of combat duty in Vietnam, was wounded on three occasions, and received an honorable discharge. In 1974 Beverly became a full-time production employee of Miller Brewing. He maintained this full-time position from June 1974 to January 20, 1983. During Beverly's employment at Miller Brewing his co-workers discovered that he was easily startled, and they intentionally caused him to have wartime flashbacks by

N.W.2d 545 (1980); *Cruz v. ILHR Dept,* 81 Wis. 2d 442, 449, 260 N.W.2d 692 (1978); *Falk v. Industrial Commn,* 258 Wis. 109, 45 N.W.2d 161 (1950); *Gomez v. LIRC,* 153 Wis. 2d 686, 451 N.W.2d 475 (Ct. App. 1989); *Schiller v. Wisconsin ILHR Dept,* 103 Wis. 2d 353, 356–57, 309 N.W.2d 5 (Ct. App. 1981).

making loud and unexpected noises. As a result of these incidents, Beverly was absent from work for extended periods of time.

The first such absence began on April 23, 1981 when a co-worker produced a loud noise by either popping a milk carton or setting off a firecracker in a company lunchroom where Beverly was eating. The resulting noise caused Beverly to drop to the floor and experience a flashback to his Vietnam combat experiences. As a result of this incident, Beverly was placed under psychiatric care and was unable to return to work for nearly seven months.

The harassment continued after Beverly returned to work. Beginning in May 1982, he missed seven months of work after his co-workers fired a "bottle rocket" in his direction in the lunchroom.

In January 1983, upon Beverly's return to work, the harassment resumed. A co-worker picked up and dropped a steel table, evoking a startle response. Later that month, he suffered a work-related ankle sprain which left him unable to work. That injury is not involved in this action. Although his ankle had healed by February 20, 1983, Beverly was psychologically unable to return to his workplace.

Beverly filed a claim for worker's compensation, alleging that the harassment by his co-workers had aggravated his post-traumatic stress disorder to a debilitating level. In June 1989, after two hearing examiners held eight days of hearings, the Department of Industry, Labor and Human Relations (DILHR) concluded that, although Beverly's post-traumatic stress disorder was primarily associated with his military service and pre-existed his employment with Miller Brewing, it had been aggravated and accelerated beyond a normal progression as a result of his employment.

DILHR concluded that Beverly was entitled to worker's compensation and that the date of injury was January 20, 1983, the last day that Beverly had worked for Miller Brewing.

In 1981 and 1982, when Beverly's harassment-related absences occurred, Miller Brewing's worker's compensation insurer was National Union Insurance. In 1983, when Beverly ended his employment with Miller Brewing, Miller Brewing's worker's compensation insurer was Twin City Insurance.

Because Twin City Insurance had insured Miller Brewing since January 1, 1983, and Beverly's date of injury was found to be his last day of work, Twin City Insurance was liable to pay Beverly his worker's compensation on Miller Brewing's behalf. National Union Insurance was dismissed from the proceedings.

Miller Brewing and Twin City Insurance petitioned LIRC for review of DILHR's decision, and Beverly cross-petitioned, complaining of the dismissal of National Union Insurance. In May 1990, LIRC concluded that Beverly had suffered an occupational disease as a result of his employment. LIRC concluded, however, that the date of injury was April 23, 1981, the date of Beverly's first wage loss resulting from the occupational disease. Under LIRC's decision, National Union Insurance became liable to pay Beverly worker's compensation on Miller Brewing's behalf. LIRC dismissed Twin City Insurance from any liability for Beverly's claim.

Miller Brewing Company and National Union Insurance filed an action for judicial review of LIRC's ruling pursuant to sec. 102.23(1)(a), Stats. 1989–90, naming only LIRC and Beverly as defendants. LIRC moved to dismiss the circuit court action for lack of subject matter jurisdiction, asserting that Twin City Insurance's interests were adverse to those of National

Union Insurance and that Twin City Insurance should have been made a defendant within 30 days of LIRC's order as required by sec. 102.32(1)(a). Beverly joined in LIRC's motion to dismiss and also filed a conditional crossclaim or counterclaim against Twin City Insurance under sec. 102.23(1)(c) for review of that part of LIRC's decision which found the date of injury to be April 1981 (resulting in lower benefits for Beverly). The crossclaim or counterclaim was conditioned upon the circuit court's finding that it had jurisdiction to review National Union Insurance's and Miller Brewing's complaint. [3]

---

[3] National Union Insurance and Miller Brewing argue that the conditional crossclaim and counterclaim must be disregarded, reasoning that Beverly, a defendant, must make a crossclaim only against a co-defendant and must make a counterclaim only against a plaintiff. They contend that had Beverly wanted review of that part of the decision that was unfavorable to him (the date of injury), he should have appealed, naming Twin City Insurance a defendant within the 30 days statutory time limit prescribed by sec. 102.23(1)(a).

LIRC argues that Beverly need not have initiated an action for judicial review in this case and that he could have abided by LIRC's order, if no further litigation was brought by a party who was held liable for the benefits. LIRC asserts that sec. 102.23(1)(c) was created to discourage parties in worker's compensation actions from taking needless "protective appeals" and to discourage unwarranted litigation in the circuit courts. According to LIRC, sec. 102.23(1)(c) authorizes the crossclaim and counterclaim Beverly brought in this case.

LIRC and Beverly also assert that if we accept National Union Insurance's and Miller Brewing Company's positions about the meaning of adverse party and crossclaims and counterclaims, an appellant can manipulate the appeal procedure and might be able to protect a party by simply not naming it as a defendant.

The circuit court granted the motions to dismiss, and the court of appeals affirmed. In this court, Miller Brewing and National Union Insurance seek review of the decision of the court of appeals.

## II.

The sole issue presented by this case is a question of law: what is the meaning of "adverse party" under sec. 102.23(1)(a), Stats. 1989–90. We ordinarily determine issues of law independently of the circuit court or court of appeals.

Section 102.23(1)(a) provides that a party aggrieved by a LIRC order may seek judicial review of the order by commencing an action within 30 days after the date of the order or award. Sec. 102.23(1)(a) requires that "the adverse party" shall be made a defendant. Section 102.23(1)(a) provides inter alia:

> [W]ithin 30 days after the date of an order or award made by [LIRC] . . . any party aggrieved thereby may . . . commence, in circuit court, an action against [LIRC] for the review of the order or award, *in which the adverse party shall also be made a defendant.* (emphasis added).[4]

---

Because we affirm the decision of the court of appeals we need not decide this issue.

[4] Section 102.23(1), (5), (6), Stats. 1989–90, provides as follows:

(1)(a)    The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive. *The order or award granting or denying compensation, either interlocutory or final, whether judgment has been rendered on it or not, is subject to review only as provided in this section and not under ch. 227 or s. 801.02.* Within 30 days after the date of an order or award made by the commission either originally or after the filing of a petition for review with the department under s. 102.18 *any party aggrieved*

*thereby may by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court commence, in circuit court, an action against the commission for the review of the order or award, in which action the adverse party shall also be made a defendant...*"

(b)　In such an action a complaint shall be served with an authenticated copy of the summons. The complaint need not be verified, but shall state the grounds upon which a review is sought. Service upon a commissioner or agent authorized by the commission to accept service constitutes complete service on all parties, *but there shall be left with the persons so served as many copies of the summons and complaint as there are defendants, and the commission shall mail one copy to each other defendant.*

(c)　The commission shall serve its answer within 20 days after the service of the complaint, and, within the like time, the adverse party may serve an answer to the complaint, *which answer may, by way of counterclaim or cross complaint, ask for the review of the order or award referred to in the complaint with the same effect as if the party had commenced a separate action for the review thereof.*

. . ..

(e)　Upon such hearing, the circuit court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

1.　That the commission acted without or in excess of its powers.

. . ..

3.　That the findings of fact by the commission do not support the order or award."

. . ..

(5)　The commencement of action for review shall not relieve the employer from paying compensation as directed, when such action involves only the question of liability as between the employer and one or more insurance companies or as between several insurance companies.

(6)　If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence. (Emphasis added.)

This court has interpreted the meaning of "adverse party" in several cases. Although each case presents a unique set of facts, these past decisions are helpful in establishing the meaning of the term "adverse party" as used in sec. 102.23(1)(a).

In several cases, including one dating back to 1916, this court has interpreted "adverse party" to mean "the one in whose favor the award was made." *Hammond-Chandler L. Co. v. Industrial Commn,* 163 Wis. 596, 602, 158 N.W. 292 (1916).

The *Hammond-Chandler* interpretation was followed in *Gough v. Industrial Commn,* 165 Wis. 632, 162 N.W. 434 (1917). In *Gough,* after the Industrial Commission awarded benefits to a deceased employee's mother rather than to his widow, the widow filed an action to review the commission's determination, but failed to name the deceased employee's mother as a defendant. The operative statutory language was identical to the pertinent language in sec. 102.23(1)(a). The court concluded that the mother was adverse to the widow in the action because the mother was favored by the award the widow wanted reversed.[5]

In *Youghiogheny & Ohio Coal Co. v. Lasevich,* 171 Wis. 347, 348, 176 N.W.2d 347 (1920), the court interpreted *Gough* as standing for the proposition that "[t]he party *in whose favor* the award is made is an adverse party . . .." Applying this interpretation of "adverse party," the court dismissed a complaint in a judicial

---

[5] To now find in favor of plaintiff [widow] would necessarily require the setting aside of the award *in favor of* the mother . . .. It is evident that an award to the mother could not be permitted to stand if an award should properly have been made to the widow. The rights, if any, therefore, of the widow would necessarily be adverse to those of the mother, if any. 165 Wis. at 635–36 (emphasis added).

review action because it failed to name as a defendant an alien property custodian designated by federal law to receive benefits awarded to widows of non-resident aliens who died in industrial accidents. The custodian was an "adverse party," the court said, because under federal law he stood in place of the employees and beneficiaries in whose favor the award was made, and whose interest was adverse to that of the employer seeking judicial review.

In *Brandt v. LIRC,* 166 Wis. 2d 623, 480 N.W.2d 494 (1992), an unemployment compensation case arising under sec. 102.23(1), the court again used the phrase "a party in whose favor the award was made" to describe an "adverse party."

The definition of "adverse party" as a party in whose favor the award was made has thus been widely accepted in the case law. LIRC has adopted the court's interpretation of the phrase "adverse party" in sec. LIRC 3.06 of the Wisconsin Administrative Code, which states in part: "The action shall be commenced against the commission, and *the party in whose favor* the order or award was made shall also be made a defendant." (emphasis added.)

In addition to equating "adverse party" with a party in whose favor the award was made, the court has stated that Black's Law Dictionary can be used to define "adverse party" in sec. 102.23(1)(a). Black's defines adverse party as "every party whose interest in relation to the judgment or decree appealed from is in conflict with the modification or reversal sought by the appeal." *Brandt v. LIRC,* 166 Wis. 2d 623, 630, 480 N.W.2d 494 (1992).[6]

---

[6] In *Brandt* the court quoted with approval the definitions of adverse party in the following cases that did not involve sec. 102.23(1)(a) or its precursors:

Our court has also stated that a court may look to the administrative proceedings to determine which parties had adverse interests. In *Holley v. ILHR Dept,* 39 Wis. 2d 260, 264-65, 158 N.W.2d 910 (1968), the court concluded that "an 'adverse party' can only have reference to a party whose interests were adverse in the proceedings before the department . . .." In *Holley* the administrative agency awarded a death benefit to the State Fund on finding that the decedent had no dependents. The employer and the insurer appealed, asserting no liability but failing to name the State Fund as a defendant. The court concluded that the State Fund had appeared as a party in the administrative hearing.[7] It further concluded that the State Fund's interest in receiving the benefit was adverse to the appellant's inter-

---

*Harrigan v. Gilchrist,* 121 Wis. 127, 208, 99 N.W. 909 (1904): an adverse party for service requirements is one in "the possession of some substantial interest adverse to the judgment, a revision of which is sought in the appellate court."

*Stevens v. Jacobs,* 226 Wis. 198, 201, 275 N.W. 555, 276 N.W. 638 (1937): "The words 'adverse party' in the appeal statute relative to serving notice . . . includes each and every party whose interest on the face of the judgment is adverse to the interest of appellant . . .." The statute at issue in *Stevens* was former sec. 274.11(1), which provided: "An appeal is taken by serving a notice of appeal . . . on the *adverse party* and on the clerk of the court in which the judgment . . . is entered . . ." This statute has been renumbered to sec. 817.11, Stats., and reads in part, "On appeals from a judgment the appellant shall serve the notice of appeal upon *all parties bound* by the judgment *who have appeared in the action."* (Emphasis added.)

[7] In this case no one disputes that the two insurance companies were parties in the administrative proceedings. See sec. 102.17(1)(a), Stats. 1989-90. The dispute is whether Twin City Insurance is an adverse party under sec. 102.23(1)(a).

est. Because the State Fund was an adverse party and not named as a defendant, the action was dismissed.

As these cases illustrate, the court has used three approaches in examining whether a party is adverse under sec. 102.23(1)(a): (1) a party in whose favor an award has been made is an adverse party; (2) a party whose interest is in conflict with the modification or reversal of the administrative decision sought by the action for judicial review is an adverse party; and (3) a party whose interests were adverse to the appellant during the administrative proceedings is adverse to an appellant in an action for judicial review. [8]

Upon examination of the administrative decision in this case, we conclude that it was in favor of Twin City Insurance, because Twin City Insurance was dismissed

------

[8] While the court of appeals applied this court's interpretation of adverse party in the same manner as we have, the court of appeals also concluded that an adverse party under sec. 102.23(1) (a) includes "any party bound by the Commission's [LIRC's] order or award granting or denying compensation to the claimant." *Miller Brewing Co.*, 166 Wis. 2d at 837. The court of appeals also concluded that the term "adverse parties" includes parties who may have differing interests in the outcome of the circuit court action. Because Twin City Insurance was bound by LIRC's order in this case, it was, according to the court of appeals, an adverse party.

Miller Brewing and National Union Insurance assert that the court of appeals's interpretation contravenes sec. 102.23(1)(a) which limits "adverse party" to a party adverse to the appellant in the circuit court action. The court of appeals rejected National Union Insurance's contention that adversity is limited in this case to adversity between and among Miller, National Union and Twin City Insurance.

Because of our holding in this case, we need not determine the validity of the court of appeals' equating "adverse party" to a party bound by LIRC's decision.

from the case. Thus, applying the "in favor of" approach, Twin City Insurance is an adverse party for purposes of sec. 102.23(1)(a).

Applying the second approach taken in our earlier cases, we would further conclude that Twin City Insurance is a party whose interest is in conflict with the modification or reversal of the administrative decision sought by the action for judicial review. Twin City Insurance has an interest in sustaining LIRC's order releasing it from liability. National Union Insurance's interest is in obtaining a reversal or modification of LIRC's order to relieve Miller Brewing of liability for worker's compensation or in establishing that Miller Brewing's worker's compensation liability is borne by Twin City Insurance.

When we examine the complaint filed by National Union Insurance and Miller Brewing in the circuit court action, we again conclude that Twin City Insurance is a party whose interest is in conflict with the modification or reversal of the administrative decision sought by the action for judicial review. The complaint is stated broadly, seeking review of LIRC's order and findings and asking that the order, findings and decision be set aside. The complaint is not limited to those findings of fact and parts of LIRC's order which do not affect Twin City Insurance. According to the complaint, Twin City Insurance and National Union are united in their interest in defeating Beverly's claim against Miller Brewing. Nevertheless, the fact remains that if Miller Brewing were found liable, the two insurance companies would be directly opposed to each other on the issue of the date of injury.

Reading the administrative decision and the complaint together, we conclude that Twin City Insurance is a party in whose favor the administrative decision was

717

rendered and who might be harmed by the reversal or modification of the decision sought by the appeal. Thus, Twin City Insurance is an adverse party for purposes of sec. 102.23(1)(a).

Miller Brewing and National Union urge us to take the third approach explicated in our previous cases. They urge us to examine the administrative proceedings to determine whether the party who was not named as a defendant in the judicial review action was an adverse party in the administrative proceedings. Miller Brewing and National Union Insurance assert that at every stage of the administrative proceedings they and Twin City Insurance maintained that Beverly's injury resulted from his combat experiences, and not from his employment. They contend that the two insurance companies and Miller Brewing were united in interest: The insurance companies sought dismissal of Beverly's claims under worker's compensation and did not dispute the date of injury. They repeatedly argue in this court that neither insurance company took the position that might have been expected of them, i.e., that if Miller Brewing Company was found responsible for Beverly's injury, the other insurance company was liable for payment of worker's compensation. They insist that both insurance companies consistently sought the dismissal of themselves, each other, and Miller Brewing.

Beverly disputes Miller Brewing's and National Union Insurance's recounting of the administrative proceedings. He maintains that National Union Insurance and Twin City Insurance asserted in the administrative proceedings that they were not united in interest, despite Beverly's assertion that they were.

The record before us shows that Twin City Insurance and National Union Insurance were represented by separate counsel. In addition, LIRC permitted each

insurance company to conduct an independent medical examination of Beverly, stating that "where multiple insurers face an issue regarding which insurer is liable, they may have opposing interests for which resolution would require separate medical experts." Finally counsel for National Union Insurance refused to agree to Beverly's counsel's request to cross-examine witnesses after counsel for the insurance companies had completed their direct examinations. As counsel for National Union Insurance wrote, National Union Insurance "could not agree in advance that there is an identity of interests" between the two insurance companies. Letter dated Feb. 14, 1989.

National Union claims in its brief that its reference to non-identity of interest and conflicts of interest between the two insurance companies relates to the fact that these two competitors have competing business interests. National Union maintains that two separate parties "are entitled to their own defenses, their own attorney/client confidences and their own medical experts. But this is of no relevance as to whether the two insurance companies were or were not adverse within the meaning of sec. 102.23." Reply Brief, p. 11.

This record does not contain a full transcript of the administrative proceedings. [9] Thus, from the record before us, we cannot determine the positions National Union Insurance and Twin City Insurance took on the merits in the administrative proceedings.

We do not think, however, that the nature of the insurance companies' positions at the administrative proceedings is determinative in this case. The insurance companies' defense strategy does not bind LIRC. LIRC has the duty "to find the facts and determine the com-

---

[9] A transcript may not even have been completed in light of the jurisdictional challenge.

pensation irrespective of the presentation of the case by the attorneys." *Nystrom v. Industrial Commn,* 196 Wis. 406, 409, 220 N.W.2d 188 (1928), cited with approval in *C.F. Trantow v. Industrial Commn,* 262 Wis. 586, 592, 55 N.W.2d 884 (1952). The insurance companies' alleged refusal to argue about the date of injury did not affect Beverly's rights against the insurance companies. Nor did it negate LIRC's ability to determine each insurance company's liability. In sum, the insurance companies' avowed refusal to raise defenses against each other in the administrative proceedings is not determinative of their adverse interests in applying sec. 102.23(1)(a).

At oral argument, counsel for National Union Insurance and Miller Brewing also asserted that the two insurance companies are not adverse because neither one will ultimately pay the claim. National Union Insurance contends that Miller Brewing is, in effect, self-insured and is obligated to reimburse either or both insurance companies for any worker's compensation paid to Beverly. Thus, contends counsel for National Union Insurance, the two insurance companies are not adverse.

Beverly's counsel counters this "self-insured" argument by referring to a letter in the record from counsel for Miller Brewing and National Union Insurance to the Worker's Compensation Division, dated September 19, 1985. In this letter counsel for Miller Brewing and National Union Insurance advised the Worker's Compensation Division that "Miller is not self-insured on worker compensation matters" and that Beverly's counsel was mistaken in stating that Miller Brewing is in "substance 'self-insured' ". The letter further states that counsel for National Union Insurance represents Crawford Insurance which is the adjuster for National Union Insurance, but does not represent Hartford, the adjuster

for Twin City Insurance, "since Hartford's interests are directly in conflict with those of Crawford."

Again we caution that the record is incomplete, and we cannot determine whether Miller Brewing is self-insured or whether the insurance companies took opposing positions before the administrative agency.

In any event, the financial arrangements between Miller Brewing and the insurance companies do not appear to affect Beverly. Beverly may seek payment from either the employer or the insurance company which is determined to have insured the liability. Sections 102.28(2) and 102.30(4), (5), Stats. 1989–90. As best we can tell from the record, neither insurance company has denied its liability to Beverly if Miller Brewing were determined to be liable. Under the worker's compensation act, depending on LIRC's ruling, one of the two insurance companies may be held liable and the other not. The interests of the two insurance companies are therefore adverse. The parties' interests under the worker's compensation act, rather than the parties' determination of their interests or their positions in litigation, are important in interpreting and applying sec. 102.23(1)(a).

The *Brandt* case provides a good example of an application of the principle that a party's position at the administrative proceedings does not determine status as an adverse party. In *Brandt,* an employee (who co-owned, with his brother, the employer corporation) claimed unemployment compensation. DILHR determined that the employee-claimant had received an overpayment of unemployment compensation benefits. The employer corporation neither appeared at the administrative proceedings nor objected to the payment of benefits. After an award in favor of the unemployment compensation fund was made, the employee-claimant sought

review in the circuit court under sec. 102.23(1)(a). The employee-claimant failed to join the employer corporation as a defendant in the action for judicial review.

LIRC challenged the circuit court's jurisdiction on the ground that the employer corporation was not made a defendant, and the employee-claimant argued (as National Union Insurance and Miller Brewing argue in this case) that because the omitted party never took a position adverse to the appellant in the administrative proceedings, the appellant did not have to join the omitted party as a defendant under sec. 103.23(1)(a). The *Brandt* court recognized that the employer corporation did not object to the overpayment at the administrative proceedings because of family connections to the employee-claimant. The *Brandt* court concluded, however, that the employer corporation was nevertheless an adverse party because, under the worker's compensation act, the overpayment could in the future affect the employer corporation's tax rate.

*Brandt* teaches that neither the position a party takes at the administrative proceeding, nor a party's willingness to be considered non-adverse, renders the party non-adverse for purposes of sec. 102.23(1)(a). *Brandt* concluded in effect that each employer is, by its very role in the statutory framework, an adverse party whenever an employee appeals an unemployment compensation benefits decision to circuit court. *Brandt* makes clear that adverse party status is not dependent on tactical positions taken during the administrative proceedings.

We conclude that in this case the respective liability of the two insurance companies depends on the determination of the date of injury. Regardless of the positions the insurance companies took at the administrative proceedings, the worker's compensation act permitted a

decision to be rendered against one of the insurance companies and favorable to the other. Such a decision was entered against National Union Insurance and in favor of Twin City Insurance in this case. We therefore conclude that Twin City Insurance was an adverse party which should have been named as a defendant. As we stated previously, failure to name an adverse party within the statutory time period requires dismissal of the action.

For the reasons set forth, we conclude that National Union Insurance's and Miller Brewing's action for judicial review was properly dismissed for failure to name Twin City Insurance, an adverse party, as a party defendant pursuant to sec. 102.23(1)(a).

*By the Court.*—The decision of the court of appeals is affirmed.