## UNITED STATES v. THE SAN LEONARDO.

### SAME v. THE VILLARPEROSA.
Nos. M–567, M–568.

District Court, E. D. New York.
Nov. 18, 1942.

See, also, 43 F.Supp. 140.

George A. McNulty, Chief, Alien Property Unit, and Albert Parker, War Division Department of Justice, both of Washington, D. C., for petitioner.

Harold M. Kennedy, of Brooklyn, N. Y., for libellant.

Loomis & Williams, of New York City, for claimants Compania Ligure di Navigazione, S. A., in the first above entitled action; and Societa Commerciale di Navigazione, in the second above entitled ac-

**108**

tion. Homer L. Loomis, of New York City, of counsel.

CAMPBELL, District Judge.

These cases come before this Court on similar motions made in each case on the petition of the Alien Property Custodian, as follows:

"1. For an order substituting petitioner in all respects as a party herein in the place and stead of the Claimants.

"2. That all claims, pleadings, motions or exceptions heretofore filed herein on behalf of the claimant be dismissed, denied and overruled as to the Claimant, but without prejudice as to petitioner; that the Claimant be adjudged without any right, title or interest in said vessel and that such right, title and interest, if any, as its Claimant may have had therein prior to the said Vesting Order be adjudged vested in petitioner, and that all claims, pleadings, motions or exceptions heretofore filed herein on behalf of the Claimant be ordered to stand of record for the benefit of petitioner, pending an opportunity to petitioner to amend, supplement, or withdraw the same as petitioner may be advised.

"3. That leave so to amend, supplement or withdraw the same be granted to petitioner, as well as leave to file such other claim, pleadings, motions or exceptions as petitioner may be advised.

"4. For such other relief as may be just and proper."

What the petitioner, the Alien Property Custodian, seeks, is to be made dominus litis in each case, to the exclusion of further participation therein by the claimants.

As the facts are substantially similar in each case, one opinion will suffice.

The claimants, by their counsel, have answered the petition opposing the granting of an order which would in effect preclude them from further contesting the claim of the United States for forfeiture under the libels filed in the above entitled action.

For an understanding of the reasons for my decision, a short statement of what are contended on behalf of the Alien Property Custodian to be the facts, and which are not substantially denied on behalf of claimants, is made as follows:

In the Spring of 1941, certain vessels, including the said S. S. San Leonardo and the Motor Vessel Villarperosa, belonging to Italian and German steamship companies, were in American ports. Since the owners anticipated that these vessels might be requisitioned by the Maritime Commission pursuant to the Act of June 6, 1941, 46 U.S.C.A. note preceding section 1101, their officers and crews were specifically directed, either by the naval attaches of the embassies of the countries involved, or by the owners themselves, to perform acts of sabotage upon their own ships. Following these acts, the officers and crews of the vessels were arrested and tried, and in most instances convicted. Meanwhile, the Coast Guard took the vessels into protective custody, and thereafter the Collectors of Customs of the various districts seized them. Twenty-eight ships in all were thus seized. The twenty-ninth vessel, the Odenwald (rechristened the "Willmoto"), was salvaged by the U. S. S. "Omaha" after she had been scuttled on the high seas by her officers and crew. Later the United States filed its libels of information in causes of seizure and forfeiture, praying the condemnation of the vessels, including the vessels in question. The vessels were accordingly brought into the custody of the Courts of thirteen Federal Districts, including the vessels in question in this District. Subsequently, the use and possession of these vessels were requisitioned by the United States, through its Maritime Commission, under the Act of June 6, 1941, and on proper petitions this Court, and the other District Courts, by appropriate orders, directed compliance with the requisitions. The Courts assumed to retain custody of the vessels and jurisdiction thereover, despite their delivery to the Maritime Commission, by the process of causing the newly appointed Masters of the various ships to be designated Special Deputy United States Marshals. In all of the proceedings, claims were filed by the Italian or German owners, and subsequently other pleadings were, in some instances, also served and filed. In most cases these steps in the proceedings occurred prior to the declaration of a state of war between this Government and the German and Italian Governments.

Upon this contention of the Alien Property Custodian, and on July 22, 1942, Leo T. Crowley, Alien Property Custodian of the United States, the petitioner herein, acting under the authority of the Trading with the Enemy Act, as amended, and par-

ticularly acting under Sections 5(b) and 7(c) thereof, 50 U.S.C.A. Appendix §§ 5 (b), 7(c) and in reliance upon Executive Order No. 9095, as amended, 50 U.S.C.A. Appendix § 6 note, and pursuant to law, and having found upon investigation that the right, title and interest, if any, of the claimants in the various vessels were the property of nationals of a foreign country, designated in Executive Order No. 8389, as amended, 12 U.S.C.A. § 95 note, as defined therein, and that each of the claimants was an enemy as defined in Section 2 of said Trading with the Enemy Act, as amended, 50 U.S.C.A. Appendix § 2, not holding a license from the President, and having found also that the action about to be taken by him was in the public interest, thereupon demanded and seized, and declared vested in himself, all right, title and interest of the claimants in the respective vessels, including the vessels in question, to be held, used and administered, liquidated, sold or otherwise dealt with, in the interest of, and for the benefit of, the United States. The Vesting Order of the Custodian, which is numbered 52, has annexed to it, an exhibit, upon which are listed the names of the claimants, and the former names of the vessels which they claim. In this exhibit the names of the claimants are given as listed in Lloyd's Register, and also as the same appear in the claims actually filed in the various forfeiture proceedings, even though these latter names are in some instances misspelled and inaccurate.

The libels in each of the above entitled actions were filed in the Clerks Office of this Court on the 16th day of July 1941, and claims were filed on August 14, 1941, by Loomis & Williams Esqs., Proctors for Compania Ligure di Navigazione, S.A., claimants of the S. S. San Leonardo in the first above entitled action; and also Proctors for Societa Commerciale di Navigazione, claimants of the M V S. S. Villarperosa in the second above entitled action, the claimant in each of said actions being a foreign corporation, organized and existing by virtue of the laws of the Kingdom of Italy.

Exceptions to the libels were filed in each case, which have not been disposed of.

The petitioner, the Alien Property Custodian, armed with his Vesting Order, prays this Court to substitute him, as a party in place of the respective claimants in the two above entitled actions respectively, and for other relief as hereinbefore stated.

As to the application in so far as it asks for directions in the event the petitioner be made a party, it does not seem to me that any extended consideration need be given to them, as they are premature.

The principal question to be decided here, is the prayer for substitution. What the petitioner is really seeking, is to be made dominus litis in each action, thus excluding the claimant in each action from further participation therein.

The libellant in each action is the United States of America, and the petitioner as Alien Property Custodian, is such by appointment by the President, and is acting solely for the benefit of the United States of America.

The right of the petitioner, the Alien Property Custodian, to seize the property of alien enemies, can not be successfully questioned, and no authorities need be cited, as that has been its policy from the earliest days of this country, and it seems clear to me that the claimants in each of the above entitled actions were, at the time of the seizure of such vessels, alien enemies.

The Alien Property Custodian could not, however, take any greater interest in property seized than the alien enemies had, and this was recognized by the provisions of the Vesting Order. Therefore, the issues originally created by the libels for forfeiture of the ships, still remains to be decided in the above entitled actions.

While, at the first consideration of this question, one would say what rights can the claimants have in the vessels which they would have a right to protect in view of the seizure of the vessels by the Alien Property Custodian, on examination of the question we find that the claimants have the right to have determined whether the vessels were subject to forfeiture, as alleged in the libels; what was, the right, title, and interest which the Alien Property Custodian seized; and vested in himself? Of course, all the right, title or interest, which the claimants had .in said vessels at the time of seizure did pass to the Alien Property Custodian, for the benefit of the United States, but, the question as to what did pass, is an important issue, to be litigated, and the claimants have the right to

litigate it. The further question to be determined is, whether, if a decree of forfeiture be granted or denied in such actions, the counsel for the claimants are entitled to be compensated for fees from the fund?

It is contended, on behalf of the claimants, that the effect of the order prayed for, if granted, would be to constitute the petitioner the technical claimant in these Admiralty proceedings in rem, that is to seize the claimants' status in these actions, and that such action is not permissible under Admiralty Rule 25, 28 U.S.C.A. following section 723, and also that the claimant in Admiralty must be one who disputes the allegations of the libel which the Custodian in this case does not. United States v. 422 Casks of Wine, 1 Pet. 547, 26 U.S. 547, 7 L.Ed. 257. I do not, however, deem it necessary to consider these objections with reference to the well established doctrine of Admiralty procedure contended for by claimants, but will content myself with a consideration of the fundamental objections to substituting the Alien Property Custodian as dominus litis to the exclusion of the present claimants.

In the forfeiture suits the United States of America is the libellant. The Alien Property Custodian was appointed by the President, under the power granted him by the Trading with the Enemy Act of 1917, as amended by the First War Powers Act of December 18, 1941, § 301, 50 U.S.C.A. Appendix § 616.

These Acts were enacted under the constitutional grant of power contained in Article 1, Section 8, Clause 11, of the Constitution. He is an official of the United States, acting in its interest.

■ A suit against the Alien Property Custodian is, in effect, a suit against the United States. Cummings v. Deutsche Bank, 300 U.S. 115, 118, 57 S.Ct. 359, 81 L.Ed. 545; Banco Mexicano v. Deutsche Bank, 263 U.S. 591, 603, 44 S.Ct. 209, 68 L.Ed. 465; Becker Steel Co. v. Cummings, 296 U.S. 74, 78, 56 S.Ct. 15, 80 L.Ed. 54.

In this respect the situation of the Alien Property Custodian is analogous to that of the Director General of Railroads, as illustrated in Globe & Rutgers Fire Ins. Co. v. Hines, 2 Cir., 273 F. 774, 777, 778.

If, in the above entitled actions, he should become dominus litis, not only would the Alien Property Custodian have power to consent to a decree of forfeiture without contest, but, even if the actions proceeded to trial, a situation would be presented which would make a case impossible for the Court to adjudicate, as the libellant and the claimants would be representing the same interest with no adverse interest involved, and any adjudication made by the Court between these two parties, would be a nullity. Lord v. Veazie, 8 How. 251, 12 L.Ed. 1067; Cleveland v. Chamberlain, 66 U.S. 419, 17 L.Ed. 93; Wood-Paper Co. v. Heft, 8 Wall. 333, 19 L.Ed. 379.

■ If the order of substitution, as prayed for herein, should be granted, the libels of forfeiture filed by the United States would have to be dismissed. Such a dismissal is opposed by counsel for the United States as libellant in said actions. The alternative suggestion by counsel for petitioner, that the proper course for the Court to follow, would be to dismiss the claims to the ships, overlooks the right of aliens before our Courts, when they, or their property, are attached in legal proceedings, as determined by our Courts. An enemy alien when assailed in our Courts with respect to his person or property has the right to defend, even though he might not have the right to originally sue or litigate as plaintiff. McVeigh v. United States, 11 Wall. 259, 20 L.Ed. 80; Windsor v. McVeigh, 93 U.S. 274, 278, 23 L.Ed. 914; Hovey v. Elliott, 167 U.S. 409, 414, 17 S.Ct. 167, 42 L.Ed. 215; Watts, Watts & Co. v. Unione Austriaca di Navigazione, 248 U.S. 9, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323. Even though the property involved was ultimately to be turned over to the Alien Property Custodian, the enemy assailed was permitted to defend. Birge-Forbes Co. v. Heye, 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286; City Nat. Bank of Selma v. Dresdner Bank of Bremen, D.C., 255 F. 225; Heberich on Trading with the Enemy, p. 220 et seq.

See, also, section 7(b) of the Trading with the Enemy Act.

■ The statutory permission to defend "any suit in equity or action at law" includes Admiralty suits in rem. Ex parte Colonna, 314 U.S. 510, 62 S.Ct. 373, 86 L.Ed. 379; Wisconsin River Imp. Co. v. Pier, 137 Wis. 325, 118 N.W. 857, 21 L.R.A.,N.S., 538; Riddell v. Fuhrman, 233 Mass. 69, 71, 123 N.E. 237.

There is also at least implied in a number of cases arising under the Trading with the Enemy Act that the alien enemy

is a proper, if not a necessary party, even though the property has been taken over by the Alien Property Custodian. Birge-Forbes Co. v. Heye, supra; City Nat. Bank of Selma v. Dresdner Bank of Bremen, supra; Milwaukee-Western Fuel Oil Co. v. Industrial Comm., 172 Wis. 561, 179 N.W. 763.

The vessels are now in the possession of the United States through its Maritime Commission under its order of requisition hereinbefore described.

The only obstacle to the absolute right of the Alien Property Custodian, to the possession of the ships, and the compensation for their prior use, subject to the present use of the ships by the Maritime Commission under its order of requisition, are the libels of forfeiture filed by the United States, which obstacle can be removed by a dismissal of the libels, if the United States shall so desire.

■ The claimants contend that this Court lost jurisdiction when the vessels in question were, on the requisition of the United States Maritime Commission, and on the order of this Court, turned over to the Maritime Commission. That contention was raised and argued on the application for that order, and I see no reason for reconsidering it at length, as I am convinced that this Court did not lose jurisdiction by such turning over, either with, or without, the provision to make the new Masters Special United States Deputy Marshals, in view of the agreement by the Maritime Commission for the return of the vessels, and the rule laid down in the following cases: Ex parte Whitney Steamboat Corp., 249 U.S. 115, 39 S.Ct. 192, 63 L.Ed. 507; The Rio Grande, 90 U.S. 458, 23 L.Ed. 158; United States v. The Little Charles, 26 Fed.Cas. page 979, No. 15,612.

The jurisdiction of the Court is preserved in the Vesting Order.

I express no opinion on the question of whether counsel for the claimants are entitled to any portion of the fund, as may be hereinafter determined, for the use of the ships by the Maritime Commission, as it is not before me.

■ The Alien Property Custodian was vested with such right, title and interest, if any, as the claimants had in the vessels, and in and to any compensation for the use of the vessels that might subsequently be determined to be payable in accordance with applicable laws, as of the 22nd day of July, 1942, which was the date when the Custodian issued his Vesting Order No. 52, subject, however, to the proper claims, if any, of the proctors for the claimants for counsel fees, and he should, therefore, be allowed to intervene and become a party to each of the above entitled actions, but should not be allowed to be substituted as a claimant in each of the above entitled actions to the exclusion of the present claimants.

The questions here involved have lately been decided as to other vessels by Judge Chesnut, in the United States District Court for the District of Maryland, in the cases of United States of America v. Italian Steam Vessel "Pietro Campanella" and United States of America v. Italian Steam Vessel "Euro". 47 F.Supp. 374. No publication, or certified copy of that decision has been presented to me, and I deem it better to set forth my reasons at length, rather than to base my opinion on a reference to that opinion of which I have only an uncertified copy.

This decision will not interfere with the war effort of the United States, as it has the ships through its Maritime Commission.

The petition of the Alien Property Custodian is granted only to the extent that he be allowed to intervene, and become a party in each of the above entitled actions, with the right to file such claims, pleadings, motions or exceptions, as he may be advised to be appropriate, with the full right to take and hold the said vessels and any compensation for their use to which I hereinbefore held him to be entitled, but not to be substituted as claimant in each of said actions to the exclusion of the present claimants.

No application for a stay of proceedings in the above entitled actions has been made to me on behalf of the claimants, and therefore, I have made no findings as to it, but, leave it for a consideration on subsequent application if one be made.

Settle order on notice in accordance with this opinion.